**The below described is SIGNED.**

**Dated: December 12, 2006**

**WILLIAM T. THURMAN
U.S. Bankruptcy Judge**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | |
| **Jeffrey and Roni Potter,** | Bankruptcy Number 06-23025 |
| Debtors. | Chapter 13 |

## MEMORANDUM DECISION DENYING WELLS FARGO'S OBJECTION TO CONFIRMATION

The matter before the Court is the hearing on confirmation of the Debtors' proposed chapter 13 plan. Wells Fargo Auto Finance ("Wells Fargo") objected to the proposed plan, arguing that it is entitled to payment in full under recent changes made to the Bankruptcy Code under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "BAPCPA"). The Court held an evidentiary hearing on this matter on December 6, 2006. The parties appeared, submitted evidence and presented oral arguments. Based upon the same, the Court issues this Memorandum Decision as its findings of fact and conclusions of law.

The paragraph following 11 U.S.C. § 1325(a),[1] sometimes called "the hanging

---

[1] All statutory references herein are to the Bankruptcy Code, unless stated otherwise.

paragraph," requires a chapter 13 debtor to pay in full a secured claim which is a purchase money security interest in a motor vehicle purchased for the debtor's personal use within 910 days of filing. The original agreement was a purchase money security interest which arose between a non-debtor and Wells Fargo prior to the filing of this case, and outside of 910 days from the filing. The Debtors in this case assumed that agreement within 910 days of filing this case. The Court concludes that the assumption did not create a purchase money security obligation on the part of the Debtors within the parameters of § 1325(a)(5), and thus it need not be treated as "910 property."

I. **JURISDICTION AND VENUE**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(L). Venue is appropriate under 28 U.S.C. § 1408(1).

II. **BACKGROUND**

On July 14, 2003, Arva Potter purchased a 2001 Dodge Ram for $29,717.80 (the "Dodge"). She financed the purchase through Wells Fargo, granting it a purchase money security interest in the Dodge. Arva Potter was the sole obligor on the promissory note and security agreement owing to Wells Fargo.

On March 10, 2004, Arva Potter died intestate, survived by at least two children.[2] Jeffrey Potter, one of the joint debtors in this case, was one of Arva's children. Arva's intestate estate is currently pending in probate through a Utah State Court ("State Court"). At the hearing on this matter, Jeffrey Potter testified that although Arva's estate is currently pending in State Court, it was agreed that he could "take" the Dodge. The Dodge is still titled in Arva Potter's

---

[2]It was unclear from the Debtor's testimony exactly how many living siblings he has.

name.

Wishing to retain the Dodge, the Debtors executed an Assumption Agreement ("the Agreement") with Wells Fargo on March 25, 2004. Under the Agreement, the Debtors assumed "all of the obligations, terms, conditions, agreements and promises" under the purchase agreement executed by Arva Potter in 2003. The Agreement did not specifically state that it created a security agreement between Wells Fargo and the Debtors, but it recited the unpaid balance owing under Arva Potter's earlier purchase agreement and referred to the earlier purchase agreement for a definition of the collateral at issue (i.e., the Dodge). The Debtors have been making monthly payments to Wells Fargo under the Agreement, and the Dodge remains in their possession.

On August 16, 2006, the Debtors filed for chapter 13 bankruptcy relief. At the time of filing, the amount owing under the Agreement was $22,408.36. On October 20, 2006, the Debtors filed their Third Amended Chapter 13 Plan. Under the plan, they propose to retain possession of the Dodge, and propose to treat Wells Fargo's claim as secured only to the extent of the Dodge's value and as unsecured for the remaining balance. Wells Fargo objected to confirmation of the proposed plan, arguing that under recent changes to the Bankruptcy Code under the BAPCPA, it is entitled to payment in full of its entire claim, regardless of the Dodge's value.

### III. ANALYSIS

An unnumbered provision following § 1325(a)(9) ("the hanging paragraph") provides that a secured claim is not subject to the terms of § 506 if the creditor holds a purchase money security interest secured by a motor vehicle purchased for the debtor's personal use within 910

3

days of filing for bankruptcy relief.[3]  Section 506 provides for the bifurcation of a secured claim into two portions — a secured claim to the extent of the collateral's fair market value, and an unsecured claim for the remaining portion of the claim.  Courts interpreting the hanging paragraph and § 506 are fairly unanimous in holding that a debtor proposing to retain 910 collateral must propose payment of the secured claim in full.[4]  The parties do not dispute this conclusion.  Rather, the issue in this case is whether Wells Fargo holds a 910 claim at all.

For a claim to be treated as 910 property, a claim must show the following elements: 1) a debt secured by a purchase money security interest; 2) the debt must be for a motor vehicle purchased for the debtor's personal use; and 3) the debt must be incurred within 910 days of filing for bankruptcy relief.[5]  Because the Debtors propose to treat Wells Fargo's claim as non-910 property, they must show that one of these three elements missing in this case.

### 1.  Whether Wells Fargo Holds a Valid Security Interest

Although neither party questions whether Wells Fargo has a security interest in this case, the Court is compelled to discuss the nature of Wells Fargo's interest because of the unusual circumstances of this case.  Under Utah Code § 70A-9a-203(1), a security interest does not attach to collateral until it becomes enforceable against the debtor.  A security interest becomes enforceable against the debtor with respect to a motor vehicle where: 1) value has been given; 2) the debtor has rights in the collateral or the power to transfer rights to a secured party; and 3) the

---

[3] The Court commonly refers to claims falling under this provision as "910 property."

[4] In re Ezell, 338 B.R. 330, 335 (Bankr. E.D. Tenn. 2006); In re Brooks, 344 B.R. 417, 420 (Bankr. E.D.N.C. 2006); But see In re Carver, 338 B.R. 521 (Bankr. S.D. Ga. 2006) (holding that the hanging paragraph creates a new class of claims, distinct from unsecured and secured claims).

[5] In re Duke, 345 B.R. 806, 808 (Bankr. W.D. Ky. 2006).

debtor authenticates a security agreement or the creditor holds possession of the collateral.[6]

The Court initially had concerns as to whether the Debtors have rights in the Dodge. The evidence presented at the hearing on this matter suggests that title is still held by Arva Potter's probate estate. The Debtor Jeffrey Potter testified that he took possession of the Dodge with the consent of the other heirs but nothing adduced from his testimony suggests that he actually owns or has rights in the Dodge. Nevertheless, the Court determines that under Utah law Wells Fargo does have a security interest in the Dodge which is enforceable against the Debtors' estate.

Utah Code § 75-2-101 provides that a decedent's estate which is not disposed of by will passes to the decedent's heirs by intestate succession immediately upon the decedent's death. Under Utah Code § 75-2-103(1), the estate of a decedent who is not survived by a spouse goes first to the decedent's children per capita. Under this provision, title to property owned by an intestate immediately vests in the decedent's heirs.[7] The heirs of an intestate estate are free to agree among themselves that specific property may be given to the care and use of one particular heir.[8]

According to the Debtor's testimony, he is an heir of Arva Potter. Thus, under Utah law he was vested with a per capita share of Arva's intestate estate upon Arva's death. This share would necessarily include an interest in the Dodge, especially in light of the fact that the other heirs of Arva's estate agreed to entrust the Dodge to Jeffrey. Because the Debtor has some ownership interest in the Dodge, the Court concludes that Wells Fargo holds a security interest in

---

[6] Utah Code § 70A-9a-203 (2006).

[7] In re Matter of Estate of Lewis, 738 P.2d 617 (Utah 1987).

[8] In re Cloward's Estate, 82 P.2d 336, 342 (Utah 1938).

the Dodge which is enforceable against the Debtors' bankruptcy estate.

                2.        <u>Whether Wells Fargo's Security Interest is Purchase Money</u>

The Debtors argue that the obligation owing to Wells Fargo is not a purchase money security interest because it did not enable them to acquire ownership or gain use of the Dodge. Whether Wells Fargo holds a purchase money security interest in the Dodge is an issue of Utah state law.[9]

Utah Code § 70A-9a-103(a) provides:

(1)   "purchase-money collateral" means goods or software that secures a purchase-money obligation incurred with respect to that collateral; and
(2)   "purchase-money obligation" means an obligation of an obligor incurred as all or part of the price of the collateral or for value given to *enable* the debtor to *acquire* rights in or the use of the collateral if the value is in fact so used. (Emphasis Added).

A typical example of a purchase money security interest is found where the seller of collateral finances a debtor's purchase and retains a security interest to secure all or part of the purchase price.[10] A security interest may be purchase money even if the debtor had possession of the collateral before the loan at issue, so long as the loan enabled the debtor to retain possession.[11] Nevertheless, for a security interest to hold purchase money status, it must secure a loan which enabled the debtor to *acquire* rights in the collateral.[12] It is insufficient for a creditor to claim a

---

[9] <u>G & B Aircraft Mgmt. v. Smooth (In re Utah Aircraft Alliance)</u>, 342 B.R. 327 (10th Cir. BAP 2006).

[10] <u>First Interstate Bank of Utah, N.A. v. IRS</u>, 930 F.2d 1521 (10th Cir. 1991) (interpreting former section 70A-9-107(b) of the Utah Code, the predecessor statute to current Utah Code § 70A-9a-103).

[11] Eldon H. Reiley, <u>Article 9 As a Commercial Engine: Three Key Concepts</u>, 1 Sec. Interests in Pers. Prop. § 6:19 (2006).

[12] <u>Id</u>.

6

purchase money security interest where its funds enabled the debtor to retain possession of collateral[13]. The loaned funds must have enabled the debtor to *acquire* additional rights in the collateral.[14]

In this case, Wells Fargo's financing did not enable the Debtors to acquire rights in the Dodge. The Debtors inherited their rights in the Dodge by operation of law on the death of Arva Potter. It may be that without continued financing from Wells Fargo the Debtors could not afford to retain ownership in the Dodge. But that fact does not give Wells Fargo a purchase money security interest enforceable against the Debtors' estate. To be a purchase money security interest, Wells Fargo's funds must have enabled the Debtors to acquire more than they otherwise would have held without the financing. That requirement is missing in this case. The Debtors would have had rights to the Dodge even in the absence of the Assumption Agreement. Accordingly, the Court determines that under Utah law, Wells Fargo does not hold a purchase money security interest in the Dodge.

Because the Court concludes that Wells Fargo does not hold a purchase money security interest in the Dodge which is enforceable against the Debtors, the Court need not address the remaining elements underlying the hanging paragraph

**IV.    CONCLUSION**

Wells Fargo is not entitled to treatment under the hanging paragraph. Its objection

---

[13]First Nat. Bank of Steelville, N.A. v. Erb Equipment Co., Inc., 921 S.W.2d 57, 62 (Mo.App. E.D. 1996) (holding that a refinance loan is not purchase money because it was not used to acquire new rights in the collateral).

[14]Id.

should be OVERRULED. A separate order accompanies this Memorandum Decision.



Service of the foregoing **MEMORANDUM DECISION DENYING WELLS FARGO'S OBJECTION TO CONFIRMATION** will be effected through the Bankruptcy Noticing Center to each party listed below.

David Berry
Berry & Tripp
5296 South Commerce Drive, Suite 200
Salt Lake City, UT 84107

J. Vincent Cameron
Chapter 13 Trustee
47 West 200 South, Suite 600
Salt Lake City, UT 84101

Jeffrey and Roni Potter
P.O. Box 31
Duchesne, UT 84021

U.S. Trustee
Ken Garff Building
405 South Main Street, Suite 300
Salt Lake City, UT 84111

Richard Terry
Corbridge Baird & Christensen
39 Exchange Place, Suite 100
Salt Lake City, UT 84111